FLOYD R. McDOUGALL, Appellant, v. GUY W. SHOEMAKER, Doing Business as the SOUTHERN TIER MOTOR COMPANY, Respondent.

Third Department, July 6, 1922.

Sales — conditional sale — action for failure to comply with Personal Property Law in selling automobile after retaking by seller under conditional sale — defense that buyer under new agreement voluntarily returned car to seller to be resold, any excess over balance due to be paid to buyer — no proof of new contract or estoppel — buyer waived formal retaking after default which he could do without losing protection of statute, but not statutory requirements as to holding thirty days, sale at auction and notice of sale — buyer entitled to recover amount paid — whether buyer intended to waive statutory requirements immaterial — waiver of provisions of statute in conditional sale contract, not expressed in new contract, contrary to public policy.

In an action by the buyer in a contract for the conditional sale of an automobile against the seller for failure to comply with the Personal Property Law in selling the car after retaking under the contract, where the defense was that the buyer voluntarily redelivered the car to the seller under a new contract whereby the seller was to resell and turn over to the buyer any excess of proceeds over the balance due on the contract, the buyer was entitled to recover what he had paid

on the contract, where it appears that both parties rested the case on the testimony of the buyer in which he admitted saying to the representative of the seller, " I didn't want the car and he said they would take the car and try and sell it and if they sold it for any less than I owed on the car I would have to make that up," and upon the conceded facts that no notice of sale was given the buyer, that at the time the car was returned no payments were due and that the seller has not asked for any further payments, but has retained the series of notes which the buyer gave when the sale contract was made.

Such evidence was no proof of a new contract or of an estoppel. The buyer waived formal retaking after default in payment, which he could do without losing protection of the statute, but he did not waive the statutory requirements as to holding the car thirty days, sale at public auction and notice of sale.

Whether or not the buyer intended to waive the statutory requirements as to sale and notice is immaterial, since such an attempt would not take the case out of the operation of the statute.

*It seems,* that a waiver of the provisions of the Personal Property Law, sections 65-67, contained in a contract of conditional sale, unless embodied in a new contract, is contrary to public policy.

APPEAL by the plaintiff, Floyd R. McDougall, from a judgment of the County Court of the county of Chemung in favor of the defendant, entered in the office of the clerk of said county on the 10th day of January, 1922, upon a dismissal of the complaint on the merits by direction of the court at the close of the case.

*McDowell & McDowell [Robert P. McDowell* of counsel], for the appellant.

*Baldwin & Allison [Levi Ginsburg* of counsel], for the respondent.

HINMAN, J.:

The action was commenced in the City Court of Elmira, N. Y., for the recovery of the moneys paid by the plaintiff upon a conditional sale contract for the sale of an automobile to the plaintiff by the defendant. The complaint alleged that the defendant retook the same from the plaintiff's possession under and by virtue of said conditional sale agreement and that after retaking the same defendant did not, within the thirty days next after the expiration of the period of thirty days from the date of retaking, sell said automobile at public auction or give notice of any such sale to the plaintiff. The defendant's answer set up a separate defense to the effect that the plaintiff said he was not in a position to continue making the payments on his car as he had agreed to do, whereupon the defendant agreed with the plaintiff that he would take the car and endeavor to sell the same and if the car could be sold for any sum in excess of the balance due, such balance would be turned over by the defendant to the plaintiff; that thereafter and in furtherance of said agreement plaintiff voluntarily delivered said car to the defendant and executed and delivered to the defendant

a bill of sale for said car. The defendant's answer admits that he subsequently sold said car but did not realize from such sale any sum in excess of the balance due on said car. The jury brought in a verdict for the plaintiff.

An appeal was taken to the County Court of Chemung county. At the close of plaintiff's case defendant moved for a nonsuit and a dismissal of the complaint on the ground that the plaintiff had failed to prove facts sufficient to constitute a cause of action. Decision was reserved. The defendant then rested without offering any proof. The motion of the defendant was renewed. The plaintiff moved for a direction of the verdict in favor of the plaintiff. The court then took the case from the jury and has rendered a decision setting forth his findings of fact and conclusions of law and dismissing the complaint on the merits. From the judgment entered upon such decision the plaintiff appeals.

The proof, consisting only of the testimony of the plaintiff, shows that on or about July 22, 1920, the plaintiff and the defendant entered into a conditional sale agreement for the sale of an automobile to the plaintiff by the defendant, the title to remain in the vendor until the purchase price was paid. The price of the car was $767. It was a used car. It was represented to him as in good shape, having just been overhauled. The plaintiff was allowed $100 for another automobile which was turned over to the defendant in partial exchange. The plaintiff paid $50 in cash on the delivery of the car and on the twenty-second day of August he paid $51.10 more which was the monthly installment due on that date. On the date of the purchase of the car the plaintiff started for Endicott. It broke down near Owego. He left it there several weeks for repairs and had just gotten it home when it broke down again. Upon again obtaining it from the repair shop he took it back to the defendant's place of business. The defendant's representative told him to take it to the service station; that they would have somebody go out with him and see what was the matter with it. The head mechanic in the service station sent a man out with him to test the car, who reported upon his return that the car needed retiming; that the cylinders needed to be rebored and that there was a defect in the gas supply. The head mechanic told the plaintiff that they could not fix the car right then but if he would leave it there they would look it over and see what was the matter with it. The plaintiff returned to the office of the defendant after trying out the car with the mechanic and there again saw the defendant's representative. The plaintiff testified: " Q. What did you tell him? A. I told him I didn't want the car in the condition it was in. Q. What else did he tell you,

anything? A. He told me that they would take the car and sell it and if they sold it for any less than what I owed on it I would have to make up the difference. Q. Did they say anything about what would happen if they sold it for more? A. No, sir," and later the plaintiff testifies in answer to a question of the court: "Q. What did you say to them there? A. I told Mr. Collins what they told me over to the service station and he said they would have the car looked at and see what was the matter of it and I left the car there and when I went back to see what they found out about a week afterwards and they had sold the car." On cross-examination the plaintiff admitted having testified at the trial in the City Court as follows: "I left the car there and Collins said they would look at it and see what was the matter with it or have it looked at. I told him I didn't want the car and he said they would take the car and try and sell it and if they sold it for any less than I owed on the car I would have to make that up." The date on which the plaintiff returned the car was September twenty-first, the day before another payment of fifty-one dollars and ten cents was due. No payment was made on September twenty-second. It seems that at the time of signing the conditional sale agreement the plaintiff gave a number of notes to cover the installments of payment on the car. The plaintiff testifies that at the time the car was taken back and left by him nothing was said about those notes and that the defendant had never asked him to pay any of those notes. The plaintiff also testified that he had never received a notice from the defendant that they were going to sell the car. This is substantially all the material testimony in the case.

The plaintiff contends that when he returned the car to the defendant and it was taken and retained and sold by the defendant, it amounted to a retaking of the car by the defendant within the meaning of section 65 of the Personal Property Law; and that the defendant not having followed the provisions of that law in the matter of holding it for a period of thirty days after the retaking or of giving notice to the plaintiff of sale at public auction, he is entitled to recover of the defendant the sum of $201.10, the amount theretofore paid by the plaintiff upon the purchase price, as authorized by the Personal Property Law. The contention of the defendant is that there is no evidence that he retook the car within the meaning of section 65 of the Personal Property Law; that at the time the car was returned he had no right to take it under the conditional sale agreement and in fact did not retake it and that the parties entered into a new and different agreement which superseded the conditional sale agreement. It is apparent from the contention of the plaintiff that he raises no question as to

conversion of the car by the defendant upon any theory that the car was left by the plaintiff with the defendant for such repairs as would put the same in proper condition. We can safely assume as the court did below that the plaintiff as well as the defendant rests his case upon that testimony of the plaintiff in which he admits saying to Mr. Collins, " I didn't want the car, and he said they would take the car and try to sell it and if they sold it for any less than I owed on the car I would have to make that up," and upon the further conceded facts that no notice of sale was ever served on the plaintiff, that at the time the plaintiff returned the car there were no payments due on the contract and that the defendant has not asked the plaintiff to make any further payments, but has retained plaintiff's notes.

It has been well settled in construing sections 65–67 of the Personal Property Law* that a waiver of the provisions of the statute, contained in the contract of conditional sale itself, is invalid as contrary to public policy. (*Crowe* v. *Liquid Carbonic Co.*, 208 N. Y. 396, 402.) The Court of Appeals has also said that " the same considerations of public policy which required us to hold that an express waiver in the contract was invalid, impel us to the conclusion that a mere waiver made after default is equally offensive to the public policy manifested in the statute, and, therefore, not effective to take such a case out of the operation of the statute." (*Adler* v. *Weis & Fisher Co.*, 218 N. Y. 295, 300.) It has been held, however, that a new agreement founded upon a new consideration made after a default under the contract is valid and enforcible. (*Seeley* v. *Prentiss Tool & Supply Co.*, 158 App. Div. 853; affd., 216 N. Y. 687.)

The full effect of the decision in the case of *Adler* v. *Weis & Fisher Co. (supra)* seems to be that a mere consent or waiver not expressed in a new contract is inconsistent with public policy. This seems to be decisive of this case, since the facts here do not justify the holding that a new contract was made. No new consideration passed. The defendant did not return the notes given as part of the purchase price and the defendant did not waive any rights the waiver of which might constitute consideration, but rather reaffirmed the right which it had to resell and to hold the plaintiff responsible on his notes for any balance due after reselling the car. In this respect the case differs from such authorities as *Seeley* v. *Prentiss Tool & Supply Co. (supra)*, or *Boschen* v. *Multi-*

---

* Repealed, except as therein provided, on September 1, 1922, by Laws of 1922, chap. 642 (adding to Pers. Prop. Law, art. 4), known as Uniform Conditional Sales Act. See Pers. Prop. Law, § 76 *et seq.*, as added by Laws of 1922, chap. 642— [REP.

*color Sales Co., Inc.* (98 Misc. Rep. 637). It is impossible to see how the defendant can be said to have changed his position to his disadvantage except in so far as he is himself responsible for not having proceeded to resell the automobile in accordance with the statute. On the other hand, the amount which the plaintiff had paid seems under the proof to have been far in excess of the rental value of the car for its use. The defendant pleaded a new contract but offered no proof to sustain his pleaded contention that a bill of sale passed. There is no proof in the case from which we can hold that there was a valid new contract or an estoppel.

There was no express waiver by the plaintiff but the inference is irresistible that the plaintiff waived his right to be in default, which under the contract would have been accomplished by a failure to make his payment the following day; that he waived the usual retaking after default, of a physical removal of the car from his possession by the defendant, by permitting the defendant to exercise an act of ownership inconsistent with its possession by the plaintiff, namely, by authorizing a resale of the same by the defendant without going through the formalities agreed to in the conditional sale agreement.

An act of ownership inconsistent with the possession of the article by the vendee without a physical removal by the vendor is a sufficient retaking within the meaning of the act. (*Crowe* v. *Liquid Carbonic Co., supra.*) When the plaintiff said to the defendant that he did not want the car and acquiesced when the defendant said he would take the car and try to sell it and if he sold it for any less than the plaintiff owed on the car the latter would have to make that up, the defendant by taking the car at that time disabled himself from performing on his part so far as any other retaking after default was concerned and the necessary inference is that he acquiesced in the waiver by the plaintiff of any formal retaking after default. The defendant must be deemed to have understood from the attitude and the words of the plaintiff that he did not intend to pay the installment due on the next day and that the defendant could, as he did, treat the contract as broken at that time. The law does not require a vain thing and a strict performance of such a condition precedent as a physical retaking after default may be waived. " It is a sound principle that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned." (*Fleming* v. *Gilbert*, 3 Johns. 528, 531; *Clarke* v. *Crandall*, 27 Barb. 73.)

No new contract was made. There was a default in payment the next day. The defendant then had the right to retake, but it was already in his possession by his own voluntary act in taking

it prior to default.  By his own act he had disabled himself from a formal retaking at that time.  In subsequently selling the car he exercised an act of ownership inconsistent with the possession of the car by the vendee, which would likewise have constituted an act of retaking if it had not already been in his physical possession by his own voluntary act.  There was no express waiver by the plaintiff of the statutory requirements as to holding for thirty days, sale at public auction, or notice of sale.  No such waiver should be implied as against the policy of the statute.  There is nothing in the proof to overcome the presumption that the plaintiff did not waive or attempt to waive those statutory requirements. The inference to be drawn is that the plaintiff simply waived the right of the usual formal retaking after actual default in payment. This a conditional vendee can do without materially weakening the protection which the statute was designed to afford.  Whether the plaintiff intended to or not to waive the statutory requirements as to sale and notice is immaterial since such an attempt on his part would be ineffective to take the case out of the operation of the statute.

The judgment of the County Court should be reversed and judgment directed for the plaintiff in the sum of $201.10, with interest from September 22, 1920, with costs.

All concur.

Judgment reversed and judgment directed for the plaintiff in the sum of $201.10, with interest from September 22, 1920, with costs.