[L. A. No. 12347. In Bank.—March 26, 1931.]

SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Respondent, v. JOSEPHINE M. LAMB et al., Defendants; ELLEN AUGUSTA DONOVAN, Appellant.

James Donovan for Appellant.

Bordwell, Mathews & Wadsworth, Ray W. Bruce and John H. Mathews for Respondent.

THE COURT.—This is an appeal from a default judgment in a foreclosure action, entered against defendant Ellen Augusta Donovan, after a demurrer to her answer had been sustained, with leave to amend. The facts out of which this controversy arose, as discovered by the record, are as follows:

On October 3, 1925, Josephine M. · Lamb and Ellen Augusta Donovan, joint owners of certain real property, executed their joint promissory note in the sum of $4,000, payable to the plaintiff bank October 3, 1928. This note was secured by the mortgage which is the subject of this action. Subsequently, the plaintiff bank granted an extension until October 3, 1931. Appellant Augusta Donovan performed all of the terms and conditions of the mortgage, and paid interest on the note, up to the time this foreclosure action was commenced, with the exception that a certain street assessment levied by the city of Los Angeles was not paid. The ordinance of intention in reference to this assessment was passed by the city council on September 4, 1925, approximately a month before the mortgage involved herein was executed. The city continued proceedings under the Street Opening Act of 1903 (Cal. Stats. 1903, p. 376), condemned certain property necessary for the improvement, and, on June 20, 1928, assessed the property here involved in the sum of $7,500. Defendant Augusta Donovan filed a written protest against the assessment, as required by law, which protest was denied on November 9, 1928. On November 14, 1928, the city slightly lowered the assessment against the property involved herein, making the final assessment the sum of $7,088. On December 31, 1928, defendant Augusta Donovan commenced an action in the superior court, contesting the validity of the entire assessment procedure. On May 17, 1929, the trial court upheld the validity of the assessment. Defendant Augusta Donovan thereupon perfected her appeal from the judgment so entered. This court, on June 11, 1930, upheld the validity of the assessment (*Donovan* v. *City of Los Angeles*, 209 Cal. 552 [288 Pac. 1083]).

In the meantime, on April 10, 1929 (before the trial court had rendered its decision in the assessment case, and while that action was pending) the plaintiff mortgagee paid to the city of Los Angeles the sum of $7,088 in full satisfaction of the assessment. After having paid the assessment, which it is alleged was a prior lien and a cloud on the title, the mortgagee demanded of the mortgagors the sum of $7,088, which it had advanced to pay the assessment. The mortgagors refused to pay the same, whereupon the mortgagee instituted this foreclosure action, electing to declare the

amount of the note and the assessment immediately due and payable, under certain provisions of the mortgage. Defendant Augusta Donovan answered, admitting the execution of the note and mortgage, and the payment of the assessment by the mortgagee, but setting up as a defense that the mortgagee had no authority to pay an assessment, the validity of which was being contested by the mortgagor. Plaintiff bank generally demurred to this defense. The trial court sustained the demurrer with leave to amend. Augusta Donovan refused to amend and elected to stand on her answer. Her default was duly entered, and from the judgment so secured, she prosecutes this appeal. The main point presented is in reference to the sufficiency of this defense, which depends, of course, on the terms and conditions of the mortgage.

The mortgage here involved contains the usual provisions commonly found in such instruments. Among other things, it provides that the mortgage is given to secure "the faithful performance of all the covenants, agreements and conditions" therein set forth; that the mortgagor "agrees to pay, as soon as due, all taxes, assessments and incumbrances, which may be, *or appear to be,* liens" against the property, and "to pay and settle promptly (or cause to be removed by suit or otherwise) all adverse claims against said property"; that "in case said taxes, assessments or incumbrances so agreed to be paid by the mortgagor be not so paid . . . *then the mortgagee, being hereby made the sole judge of the legality thereof, may, without notice to the mortgagor, pay such taxes, assessments, or encumbrances* . . . ", that all sums expended by the mortgagee, "in doing any or all of the things authorized in this mortgage", shall be secured by the mortgage; that the mortgagor promises to pay the note and in case of default in the payment of the same, or "in the performance of any of the covenants or agreements herein contained . . . the whole sum of money then secured by this mortgage shall become immediately due and payable at the option of the holder of said note, and this mortgage may thereupon . . . be foreclosed . . . ". It is then provided that "the mortgagor also hereby mortgages the property . . . to secure every promise and agreement therein contained . . . ". (Italics added.)

When the above provisions are read together, there can be no doubt that the contracting parties clearly provided that the mortgagee rather than the mortgagor should be the one to determine whether to pay the assessment or whether to contest the same. In other words, the mortgage expressly confers on the mortgagee the very power here exercised. The appellant tacitly admits this, but contends that the clause should not be enforced in a situation where the mortgagor is contesting, in good faith, the validity of the assessment, for the reason that it is violative of public policy and unconscionable to thus place the mortgagor at the mercy of the mortgagee. It is also contended that the payment of the assessment, under the circumstances here presented, amounted to a voluntary payment, and that the clause italicized above, if enforced, ousts the courts of jurisdiction and is therefore void. All of these contentions are without merit.

In the first place, it is admitted that the assessment involved herein, if valid, would be a prior lien to that of the mortgage, although subsequent in time. Under the terms of the Street Opening Act of 1903, the assessment became due and payable as soon as the assessment was recorded, and became delinquent thirty days after the publication of the notice of recording. If not paid by that time (or allowed to go to bond, which could not be done here, because, under the Bond Act, it is provided that any person desiring the assessment to go to bond must waive all objections to its validity) certain penalties immediately accrued. Respondent bank has computed that if it had not paid the assessment on April 10, 1929, and had waited until this court passed upon the validity of the assessment, it would have had to pay $10,632, which includes the $7,088 assessment, penalties and interest. It is obvious, therefore, that the mortgagee had an important interest to protect, and that it would have been injured had it not paid the assessment.

In the second place, it is well settled that if the mortgagor fails to pay due taxes and assessments, under provisions similar to those set forth above, the mortgagee may pay the same, and add the amount so paid to the mortgage debt, and if the mortgagor refuses to refund the same, he is in default, and the mortgagee may foreclose. (Sec.

2876, Civ. Code; *Windt* v. *Covert,* 152 Cal. 350, 353 [93 Pac. 67]; *Weinreich* v. *Hensley,* 121 Cal. 647, 656 [54 Pac. 254]; *Brickell* v. *Batchelder,* 62 Cal. 623, 630; *Brichetto* v. *Raney,* 76 Cal. App. 232, 240 [245 Pac. ·235].) This is so, even where the validity of the prior lien has not been finally determined. (*Windt* v. *Covert, supra; Weinreich* v. *Hensley, supra;* see, also, note in L. R. A. 1915D, 432.) The only way in which this case differs from the last two cases is that here the mortgagor was directly attacking the validity of the assessment at the time the mortgagee paid it. However, the mortgage expressly conferred on the mortgagee the power to determine whether the assessment should be paid or contested. We can see no reason why such a clause is unconscionable or against public policy, as contended by the appellant. There is no public interest involved. The contract is between the contracting parties and concerns them alone.

It must be kept in mind that at the very time this mortgage was executed, the ordinance of intention in reference to this improvement had already been passed. It was, therefore, clear to both contracting parties that an assessment would probably be levied against the property, and that one of the contracting parties would have to determine whether the assessment should be paid or contested. The mortgagee, as a condition of making the loan, required that it be given that power. The payment by the mortgagee can in no sense be said to have been a voluntary payment. As already pointed out, not only was the assessment a prior lien, but unless it had been paid at the time it was due, a large penalty would have been added, which would have materially decreased the mortgagee's security. ▮ Nor do we perceive in what manner the mortgagor's rights were invaded by such a clause. A remedy was open to her. She could have paid the assessment under protest and then brought an action for its recovery. (*Spencer* v. *City of Los Angeles,* 180 Cal. 103 [179 Pac. 163].)

The other assignments of error are highly technical and are without merit.

For the foregoing reasons, the judgment appealed from is affirmed.