[Civ. No. 7064. Third Dist. Nov. 9, 1944.]

TRUMAN VIRDEN, Respondent, v. E. R. NEESE et al., Appellants.

W. E. MARLOW et al., Appellants, v. TRUMAN VIRDEN et al., Respondents.

Curtiss E. Wetter for Appellants.

Newmark & Strong as Amici Curiae on behalf of Appellants.

Stanley Pugh for Respondents.

ADAMS, P. J.—This is an appeal from a decree foreclosing a logger's lien.

On or about September 21, 1943, plaintiff Virden filed a complaint alleging that about May 1, 1943, defendant Neese had employed him to fall, buck and limb logs upon certain described property and to drive said defendant's truck for the purpose of transporting said logs to the mill of Elder Creek Lumber Company located a short distance away, and had agreed to pay plaintiff specified prices for his services; that plaintiff began work May 1, 1943, and "thereafter and prior to the 6th day of September, 1943," plaintiff cut, bucked and limbed, pursuant to said employment, approximately 600,-000 feet of timber, for which services Neese became indebted to him in the sum of $1,410; and that during the same period plaintiff drove defendant's truck for the purpose of transporting logs, for a period of twenty-five days, and by reason thereof defendant became indebted to him in the sum of $250. Plaintiff further alleged that by reason of the foregoing he claimed a lien, under sections 3065, 3065a and 3065b of the Civil Code, upon all the logs in connection with which said services were rendered and upon all of the products manufactured therefrom, which said logs and products were described and alleged to be within the county of Tehama where the services were performed. Pruesser was made a defendant, it being alleged that he claimed some interest in the timber and its products.

On the same day plaintiff caused a writ of attachment to be issued and levied upon approximately 100,000 feet of lumber piled near the mill of Elder Creek Lumber Company.

Defendants Neese and Pruesser were served with summons but failed to appear, their default was duly entered, and on October 6, 1943, a judgment in favor of plaintiff for $1,616, foreclosing his lien and ordering sale of the lumber attached by the sheriff, was made and entered. On October 15, 1943, appellants Marlow and Flood brought an action against re-

spondent Virden and the sheriff of Tehama County, seeking to quiet title to the lumber which had been attached, whereupon plaintiff, on October 16, 1943, applied to the court for an order vacating the aforesaid decree and permitting the filing of an amended complaint and the joining of appellants as parties defendant. This application was granted and on October 16, 1943, plaintiff filed his amended complaint alleging matters set forth in the former one, except that his services were alleged to have been performed commencing May 1, 1943, and "thereafter and prior to the 1st day of October, 1943." It was also alleged that Marlow and Flood claimed some interest in the logs and lumber, but that their interest, if any, was subordinate to the lien of plaintiff.

Defendants Marlow and Flood answered plaintiff's complaint, alleging ownership and possession of the lumber described in said complaint and setting up that "the alleged cause of action against these Defendants is barred by the provisions of Section 3065a of the Civil Code of the State of California in this that the last work of any kind which Plaintiff claims to have done is claimed to have been done prior to the 6th day of September, 1943, and that no action was commenced in so far as these Defendants are concerned prior to the 18th day of October, 1943, and that any lien or claim of lien insofar as these Defendants are concerned expired on the 6th day of October, 1943."

After trial of the action the court filed a written opinion in favor of plaintiff, whereupon the parties entered into a stipulation that the sum of $1,900, the estimated value of the lumber, be deposited in court by defendants Marlow and Flood, to be held subject to plaintiff's lien and paid in accordance with final judgment, said defendants to be allowed to sell said lumber in the meantime.

On November 26, 1943, the court filed findings in conformity with the allegations of plaintiff's complaint, finding therein that "between the 1st day of May, 1943, and 3:00 o'clock P.M. September 16, 1943," plaintiff performed services for Neese, falling, bucking, limbing and transporting logs, thereby becoming entitled to $1,644.38 from Neese; that all of the logs upon which work was performed by plaintiff, except certain logs lying where they were cut, were transported to the mill of defendants Marlow and Flood and converted into lumber between the 1st day of June and the 26th day of

October, 1943, and that all of the lumber milled or manufactured by said defendants was milled from logs upon which plaintiff personally worked and rendered services; and that plaintiff's employment by Neese did not terminate until 3 p. m. September 16, 1943, and that there was no cessation of work by plaintiff on the logs referred to, until said September 16th. It was further found that defendants Marlow and Flood were owners of the lumber referred to, subject to a lien by plaintiff. Judgment against Neese in favor of plaintiff in the amount of $1,484.09 with costs was duly entered decreeing that the logs on the ground be first sold to satisfy plaintiff's lien, and that if the proceeds thereof be insufficient, then any balance be paid to plaintiff out of the $1,900 on deposit with the clerk.

Defendants Marlow and Flood have appealed from said judgment, contending that no logs were delivered to them after September 6, 1943, and that, as they were not made parties to the action until October 16, 1943, the thirty-day period prescribed by section 3065a within which plaintiff could bring suit to foreclose his lien had expired *as to all logs delivered to appellants,* and that, *so far as appellants are concerned,* plaintiff had lost his lien.

Respondent Virden on the other hand contends that the thirty-day period precribed by section 3065a, *supra,* did not commence to run until there was a final cessation of labor as to all of the logs still in the county, upon which he had done any work under his contract with Neese and upon which the lien was claimed; and that since the court found that plaintiff's labor did not cease until 3 p. m. September 16th, and the amended complaint bringing appellants in as defendants was filed October 16th, the action was filed in time.

Section 3065a of the Civil Code provides that the lien created by section 3065 ''shall continue in force for a period of thirty days from the time the person claiming such lien shall have ceased to do or perform the work or render the service for which said lien is claimed, while such logs, lumber or other manufactured timber products are in the county in which such labor was performed or service rendered, and said lien shall cease at the expiration of the said thirty days unless the claimant thereof, or his assignee or successor in interest, brings suit to foreclose the same, . . . If any part of the property on which the lien existed is removed from the

said county, the lien continues on the balance remaining in the county to the full extent of the claim. . . .''

Section 3065b defines ''cessation of work'' and provides that ''as used in the next preceding section the words 'the time the person claiming such lien shall have ceased to do or perform the work or render the service for which said lien is claimed' shall be construed to mean *the final date work was done or services were rendered on any* of the logs, lumber or other manufactured timber products on which the lien is claimed, so as to give the lien claimant, or his assignee or successor in interest, a full thirty days after final cessation of labor to bring suit to foreclose his lien on any or all of the logs, lumber or other manufactured timber products in question.'' (Italics ours.)

It is not contended upon this appeal that the evidence is insufficient to sustain the findings of the trial court; and the evidence shows that after September 6th Virden performed services under his contract with Neese upon logs which remained in the woods, and that his amended complaint was filed within thirty days from the last day upon which such services were performed. ■ Appellants' sole contention is that unless within thirty days just prior to the filing of his amended complaint Virden worked upon the logs which were delivered to appellants, he must be held to have lost his lien upon such logs.

We have been cited to no California cases dealing with this precise question, and we have found none; but the courts of the State of Washington have rendered decisions upon similar states of fact, that are contrary to appellants' contentions.

In *Proulx* v. *Stetson & Post Mill. Co.,* 6 Wash. 478 [33 P. 1067], plaintiffs sought to foreclose loggers' liens upon a boom of logs alleged to be in the possession of defendant mill company as the vendee of defendant Taylor by whom plaintiffs had been hired to work by the month. Labor had been performed by plaintiffs upon other logs than those in controversy, and it was contended by the mill company that plaintiffs must allege and prove that all of the labor for which the liens were claimed had been performed upon the logs upon which the liens were claimed, and that no lien could attach for services any part of which had been rendered in securing other logs, although the labor was performed for the same party, in the same logging camp, and under one continuous contract. The court said that section 1690 of the statute provided that any

person who brought an action to enforce his lien had a right to demand that such lien be enforced against the whole or any part of the saw logs upon which he had performed labor, or which he had assisted in obtaining or securing, during eight calendar months next preceding the filing of his claim of lien, for all his labor upon, or for all his assistance in obtaining or securing said·logs during the whole or any part of said eight months; that lien statutes are remedial in their nature and ought to be liberally construed in the interests of labor; that persons who purchase property subject to a lien do so at their peril; and that there was nothing in the statute requiring a laborer in a logging camp, under a general contract of employment, to incur the expense and trouble of filing a lien as often as the owner of the logs for whom he worked saw fit to ''boom'' a portion of them for his own purposes; that all that was required was that the claim of lien be filed within thirty days after the close of the rendition of services, in which event it attached upon all the logs upon which he performed labor, for the eight months' period provided by the Washington statute; and a judgment for plaintiffs was affirmed.

In *Overbeck* v. *Calligan,* 6 Wash. 342 [33 P. 825], it was contended that the logger must claim his lien within thirty days after the completion of each boom of logs. But the court said, page 826 [33 P.]:

''These claimants were not employed to work on any particular boom, as men are employed to work on a particular house or structure. Generally men are employed in logging camps to work by the month or by the season. Booms may be large or small. One might be prepared every month or every week or possibly every day. The statute provides that the claimant shall have 30 days to file his notice of lien. From when? Not 30 days from the time the boom is completed, but from the time the services rendered in securing the logs ends. We have no doubt that some inconvenience may arise from this construction of the law, but any other construction will render the logger's lien practically inoperative, and logically force him to keep a surveillance over every particular log which he cuts, and be at the expense of filing a lien every 30 days. The division of logs into booms is purely arbitrary, and such division, in the absence of any law providing for it, should not affect or restrict the claimant's right of lien.''

It is said in 34 American Jurisprudence 563 that where

the whole of the services or work done on logs is performed under a single contract, the laborer may claim and enforce his lien for his entire services upon a part only of the logs. (Citing *Martin* v. *Wakefield*, 42 Minn. 176 [43 N.W. 966, 6 L.R.A. 362].) And in 16 California Jurisprudence 678, it is stated that a logger, having a lien on logs cut by him, does not lose it because of advancements made on the property by another under a contract of purchase. (Citing *Shuffleton* v. *Hill*, 2 Cal.Unrep. 473 [7 P. 7]. Also, see, *Grimm* v. *Pacific Creosoting Co.*, 50 Wash. 415 [97 P. 297, 298]; *Steele* v. *Hellar*, 127 Wash. 140 [219 P. 879, 882-883]; *Sinclair* v. *Hedlund Lumber & Mfg. Co.*, 153 Wash. 647 [280 P. 82].)

The language of the Washington statute is no more comprehensive than that used in our statute and there is nothing in sections 3065, 3065a and 3065b of the Civil Code that limits the application of the lien to logs or lumber remaining undisposed of in the possession of the employer, or justifies the conclusion that such lien ceases to apply to any portion thereof that may have been sold. On the contrary, our statute specifically provides that the only logs, or products manufactured therefrom, upon which the lien ceases to exist are those that may have been removed from the county.

Appellants rely upon *Doyle* v. *McLeod*, 4 Wash. 732 [31 P. 96], but that case is clearly distinguishable as there the contract of the logger was construed by the court as applying separately to each 1,000 feet of logs cut, and not as being an entire contract to cut logs on the land described therein; and it was held that, in the action, which was one to foreclose a lien for stumpage, since payment for cutting was to be made separately for each 1,000 feet cut, a portion of the logs in the possession of a purchaser from the original lien debtor was liable pro rata for the amount of the lien, and not for the whole thereof.

That loggers' lien laws are remedial and should, therefore, be given a broad and liberal construction with a view to promoting the object of such acts to protect the wages of men who actually do the manual labor is stated in 34 American Jurisprudence 560, 562; and in *Carpenter* v. *Bayfield Western Ry. Co.*, 107 Wis. 611 [83 N.W. 764], the court said that the loggers' lien law should have a liberal construction since it was passed for the protection of laboring men who are generally neither able to investigate nor insist upon the credit

of their employers, nor, without suffering, to endure the loss of the wages upon which they depend for existence.

Certainly in view of the specific provisions of section 3065b, *supra*, defining "cessation of work" it cannot be said that it was intended by our Legislature that where, as here, a logger continues to perform labor for the original labor lien debtor under one agreement to perform, he should be held to have lost his lien upon any logs, or lumber manufactured therefrom, after the expiration of thirty days from the date of sale of any portion of same. Such construction would impose upon a logger in the woods the burden of ascertaining every sale made of such logs or lumber under penalty of losing his lien and, perchance, the opportunity to recover the just rewards of his labor. As was said in *Proulx* v. *Stetson & Post Mill. Co., supra*, "persons who purchase property subject to a lien do so at their peril." They are better able to protect themselves, and if any hardship is worked upon them they will, in all probability, be better able to endure it. They can always protect themselves in this state by removing from the county the logs or lumber purchased.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.